1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9   FRANCES CLAIRMONT,

10          Plaintiff,

11      v.                                            Case No.  C02-1876L

12   GENUITY INC., *et al.*,                          ORDER REGARDING PAUL
                                                      O'BRIEN'S MOTION FOR
13          Defendants.                               SUMMARY JUDGMENT

14

15   FRANCES CLAIRMONT,

16          Plaintiff,

17      v.

18   PAUL A. O'BRIEN,

19          Defendant.

20

21                          **I.  INTRODUCTION**

22      This matter comes before the Court on a motion for summary judgment filed by

23   individual defendant Paul O'Brien.[1]  (Dkt. #127).  Plaintiff Frances Clairmont is a former

24

25   _____

26   [1] The parties requested oral argument; however, the Court finds that this motion is
     appropriate for resolution without oral argument in light of the extensive briefing and lengthy

27

28   ORDER REGARDING MOTION
     FOR SUMMARY JUDGMENT - 1

1  employee of the now bankrupt Genuity, Inc.  Plaintiff alleges that O'Brien, the former Senior

2  Vice President of Sales of Genuity, wilfully denied commissions she earned during her

3  employment.  O'Brien counters that she was paid all commissions owed, and any nonpayment

4  was the result of a bona fide dispute over whether the commissions were actually owed.

5       For the reasons set forth in this Order, the Court grants in part and denies in part

6  O'Brien's motion for summary judgment.

7  **II.  DISCUSSION**

8  **A.    Background Facts.**

9       The relevant facts are set forth in detail in this Court's March 24, 2005 Order Granting

10  Individual Defendants' Motions for Summary Judgment, and will not be repeated here.  (Dkt.

11  #125).  Instead, the Court will briefly set forth O'Brien's role in the relevant events, viewing the

12  facts in the light most favorable to plaintiff.

13       O'Brien served as Genuity's Senior Vice President of Sales from January, 2001 until the

14  first week of April, 2002.  O'Brien reviewed minutes from meetings of Genuity's Sales

15  Compensation Committee (the "Committee"), and, according to plaintiff's version of the facts,

16  he attended some meetings.  In rare cases when the Committee could not resolve an issue, the

17  issue could be escalated to O'Brien for review.  Declaration of Paul O'Brien ("O'Brien Decl.")

18  at ¶ 14.  O'Brien, for all practical purposes, ended his duties as Senior Vice President of Sales,

19  and became a "lame duck," as of March 11, 2002.  O'Brien Dep. at 59.

20       According to the Genuity 2001 Sales Incentive Plan (the "Plan"), billings value credit was

21  a component of the sales force's incentive compensation.  "Billings are defined as the net value

22  of all eligible invoices issued in a given period."  Declaration of Lawrence Locker ("Locker

23  Decl."), Ex. 2 (the Plan) at p. 9.  For example, a salesperson could earn billings credit simply

24  because one of his or her customers increased their usage of a Genuity product, even if that

25

26  oral argument regarding the other individual defendants' motions for summary judgment.

27

28  ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 2

salesperson did not bring in the customer or sell any products.  O'Brien Dep. at 156.  The Committee sent an e-mail to the sales force on October 26, 2001, stating that effective October 1, 2001, the company was eliminating the billings component from the compensation structure for certain positions.  Locker Decl., Ex. 15.  The e-mail stated that the change was not being made to save the company money; instead, "it [was] being done to alleviate problems associated with billing and focus on order value and renewals for [the fourth quarter of the year]."  Id.  The e-mail further explained, "There will be no true ups[2] unless it is brought to the RVP and Sales Comp Committee."  Id.  O'Brien was one of the primary decision-makers in the decision to eliminate billings value commissions and to make the change retroactive.

Clairmont voluntarily settled her claims against Genuity.  She sued three individual defendants in July 2002.  In August 2002, she filed an amended complaint naming two additional individual defendants.  In October 2004, Clairmont filed a separate action against O'Brien, which was subsequently consolidated with the case against the other five individual defendants.  On March 24, 2005, the Court granted the other five individual defendants' motions for summary judgment and dismissed plaintiff's claims against them.

**B.    Summary Judgment Standard.**

On a motion for summary judgment, the Court must "view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact . . . ."  Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004).  All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party.  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied."  T.W.

---

[2]  According to Clairmont, a "true-up" is a way to compensate sales people for existing orders that generate more revenue than expected.  Clairmont Dep. at 182.

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 3

1   Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).[3]

2   **C.   Wage Withholding.**

3   **1.   Legal Standards.**

4   Clairmont alleges that O'Brien unlawfully withheld wages from her in violation of

5   Washington law.  The relevant statute, RCW 49.52.070, provides:

6   > Any employer and any officer, vice principal or agent of any employer who shall
    > violate any of the provisions of subdivisions (1) and (2) of RCW 49.52.050 shall

7   > be liable in a civil action by the aggrieved employee or his assignee to judgment
    > for twice the amount of the wages unlawfully rebated or withheld by way of

8   > exemplary damages, together with costs of suit and a reasonable sum for attorney's
    > fees . . .

9

10  Section 1 of RCW 49.52.050 provides for liability against employers who "rebate" employees'

11  wages; that section plainly does not apply here.  Section 2 provides for liability against any

12  "employer or officer, vice principal or agent of any employer," who

13  > Wilfully and with intent to deprive the employee of any part of his wages, shall
    > pay any employee a lower wage than the wage such employer is obligated to

14  > pay such employee by any statute, ordinance, or contract; . . .

15  RCW 49.52.050; see also Pope v. Univ. of Washington, 121 Wn.2d 479, 491 n.4 (1994)

16  (rejecting argument that the statute "establishes liability without fault").  Accordingly,

17  pursuant to the plain language of the relevant statutes, O'Brien can be held individually

18  liable only upon a showing of willfulness.

19  An employer does not "willfully" withhold wages if a bona fide dispute exists as to

20  the obligation of payment.  See, e.g., Lillig v. Becton-Dickinson, 105 Wn.2d 653, 659

21  (1986).  "The nonpayment of wages is willful when it is the result of a knowing and

22  intentional action and not the result of a bona fide dispute."  Id. (citing Ebling v. Gove's

23  Cove, Inc., 34 Wn. App. 495 (1983)).  A bona fide dispute exists when it is "fairly

24

25  [3] Clairmont has identified several inaccuracies in O'Brien's testimony, and she argues
    that the credibility issue precludes summary judgment.  The Court, however, does not engage in

26  a credibility determination because in the context of a summary judgment motion the Court
    construes the facts in the light most favorable to Clairmont.

27

debatable" whether a portion of the wages must be paid.  See Allstot v. Edwards, 114 Wn. App. 625, 634 (2002).  "Lack of intent may be established either by a finding of carelessness or by the existence of a bona fide dispute. . . .  Affirmative evidence of intent to deprive an employee of wages, however, is necessary to establish liability under RCW 49.52.050."  Pope, 121 Wn.2d at 491 n.4.  The issue of whether individuals have willfully withheld wages is typically an issue of fact.  However, in some circumstances, the issue can be resolved at summary judgment.  See, e.g., Brinson v. Linda Rose Jt. Venture, 53 F.3d 1044, 1050 (1995) (affirming grant of summary judgment when plaintiff provided only "conclusory" statements regarding wilfulness).

>        **2.      Commissions Issues.**

As an initial matter, it is undisputed that O'Brien, as Senior Vice President of Sales, had the requisite authority over the payment of wages to be held individually liable.  See Ellerman v. Centerpoint Press, 143 Wn.2d 514, 523 (2001).  That authority, however, existed only during his tenure in the position.  Clairmont's claim for wrongful withholding is based on the same commissions issues underlying her claims against the other individual defendants.  Some of those issues, however, arose only after O'Brien stepped down from his position and left the company; he cannot, therefore, be responsible for them.  The Court therefore considers only the commissions issues that arose during O'Brien's tenure as the Senior Vice President of Sales.

With the exception of Clairmont's claim to billings value credit, she has presented no evidence that O'Brien ever made a decision regarding her disputed commissions.  Instead, Clairmont argues that he should be held individually liable for two primary reasons.  First, Clairmont argues that O'Brien promised her supervisor, Mary Crebassa, that if they closed the Microsoft WebTV Dial deal, they would be given the appropriate commission.  Even if O'Brien made that statement, he did not wilfully withhold Clairmont's wages because the two-year agreement was never executed.  Instead, the parties ultimately executed a month-to-

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 5

1   month contract, which Genuity terminated in February 2002.  Crebassa informed Clairmont

2   right away that because of the nature of the final contract and the product, they would not

3   receive a commission on the Microsoft deal.  Crebassa Dep. at 123 (stating that she informed

4   Clairmont that they would not "get credit" for the Microsoft deal); Declaration of Shannon

5   McMinimee ("McMinimee Decl."), Ex. F (Crebassa explaining that they had commission

6   questions because "there was no written commission plan for the Dial product").

7   Second, Clairmont argues that O'Brien wilfully withheld her wages because he was aware of

8   her claims by virtue of his position, and had the authority to resolve them.  These facts,

9   however, fall far short of establishing that O'Brien intended to deprive her of wages.

10  Instead, the Committee, not O'Brien had primary responsibility to consider the issues, but

11  never reached a decision regarding the disputed commissions.

12        The lack of a decision from the Committee, however, is not dispositive of all

13  Clairmont's claims against O'Brien.  O'Brien participated in the decision to eliminate

14  billings value credit and to make the change retroactive, as a practical matter, to the

15  beginning of 2001.[4]  Clairmont argues that the change had the effect of depriving her of

16  billings value credit for the WebTV Dial deal for August, September, and October 2001.

17  Although O'Brien argues that Clairmont was not entitled to the disputed billings value credit

18  because the deal never posted to the Arbor Billings database, Clairmont has raised a genuine

19  issue of fact regarding that issue.

20        Genuity undisputedly retained the discretion to modify its compensation plan at any

21  time.  However, in making the change retroactive to the beginning of the year, after

22  employees had performed the work, the company arguably deprived its employees of

23  compensation already earned.  Compare Lillig, 105 Wn.2d at 600 (finding lack of intent

24  where amount of bonus due under compensation plan was subject to some discretion), with

25

26        [4] O'Brien argues that he did not act alone in making the change.  Whether or not others
    were involved in the decision is irrelevant for purposes of this motion.
27

28  ORDER REGARDING MOTION
    FOR SUMMARY JUDGMENT - 6

Ebling, 34 Wn. App. at 500 (affirming finding of wilfulness where employer lowered employee's commission rate then applied the lower commission rate to transactions that were executed before, but closed after, the change).  The fact that an employee could appeal the issue to the Regional Vice President and the Committee does not preclude a finding of intent. In essence, the policy change shifted the burden to employees to convince the Committee that they were entitled to payments they had arguably already earned in the first three quarters of the year.  O'Brien informed employees that in general, the company was "not going to have a wholesale true-up of [the Plan]. . . .  My general feeling was we were not going to open the flood gates here to have true-ups going on. . . .  To the best of my knowledge that was my story and I was sticking to it."  O'Brien Dep. at 114.  Clairmont appealed, but the issue was not resolved in her favor.  The issue of whether O'Brien intended for the change to result in the deprivation of earned wages is an issue of fact to be resolved at trial.  At the least, he acted intentionally in changing the policy, and the resulting wage deprivation was foreseeable.

In sum, issues of fact remain regarding whether Clairmont received the appropriate amount of billings value credit on the WebTV Dial deal for August, September, and October 2001, and whether O'Brien acted wilfully to deprive her of wages earned.

**D.      Document Destruction.**

Clairmont argues that an inference of wilfulness is created because she requested but never received copies of the Committee's meeting minutes.  Although Clairmont admits that O'Brien "does not appear to be at fault for the loss of those documents," she argues that an inference against him is nonetheless appropriate because "his interests are closely aligned with those of his former employer and colleagues."  Plaintiff's Opposition at 13.  The mere fact that defendants' interests are aligned is insufficient to support an inference of wilfulness against O'Brien.

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 7

**E.      Rule 56(f) Continuance.**

Although Clairmont deposed O'Brien as a non-party witness earlier in this litigation, she requests a continuance to depose him now that she has named him as a defendant.  To obtain a Fed. R. Civ. P. 56(f) continuance, plaintiffs must make "'(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists.'"  See Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1129 (9th Cir. 2004) (internal quotation and citation omitted).  The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment.  Id. at 1129-1130.

In granting Clairmont's motion to consolidate the case against O'Brien with the one against the other defendants, the Court noted that Clairmont knew about Mr. O'Brien's relevance to this litigation since she filed her case in July 2002, yet she waited until October 2004 to bring an action against him.  The Court found that plaintiff's delay in suing Mr. O'Brien was egregious.  Clairmont's current attempt to take advantage of her delay by arguing that discovery in the case against O'Brien is still in its early stages must fail. Moreover, Clairmont has already deposed O'Brien, she has not identified additional facts she hopes to gain that would preclude summary judgment, and she cancelled his second deposition, which was scheduled for May 17, 2005.  In light of these facts, plaintiffs' request for additional time to conduct discovery is denied.  See, e.g., Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co., 353 F.3d at 1129-30 ("The district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past, or if the movant fails to show how the information sought would preclude summary judgment").

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 8

defendant Paul O'Brien's motion for summary judgment (Dkt. #127).  Clairmont may pursue her claim that O'Brien wilfully denied her billings value commissions for the Microsoft WebTV Dial deal for August, September, and October 2001; the remainder of her claims are dismissed.

DATED this 20th day of June, 2005.

*MrS Lasnik*

Robert S. Lasnik
United States District Judge

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 9